[Civ. No. 851. Fifth Dist. Apr. 12, 1968.]

R. E. THARP, INC., Plaintiff and Respondent, v. MILLER HAY COMPANY et al., Defendants and Appellants.

82

Schroeder, Campbell & McFeeters and Truman F. Campbell for Defendants and Appellants.

Lester J. Gendron for Plaintiff and Respondent.

GARGANO, J.—Plaintiff, a licensed radial highway common carrier, brought this action to recover $11,935.22 from defendants on an open book account.[1] During the trial plaintiff attempted to prove that the money which it sought to recover was for undercharges resulting from the transportation of defendants' hay. Defendants, however, objected to plaintiff's evidence on the ground that it was at variance with the pleadings and the objection was sustained. Plaintiff then moved the court for leave to amend its complaint to state a cause of action for an account stated in order to conform to proof. Plaintiff's motion was granted by the court and the complaint was deemed amended accordingly. At the conclusion of the trial the trial judge (Judge Coffee) resigned before awarding judgment to either party. By stipulation the cause was submitted to another judge (Judge Hammerberg) for decision on the reporter's transcript. Judgment was granted in favor of defendants and plaintiff moved for a new trial. It asserted that irregularities in the proceedings prevented plaintiff from having a fair trial; plaintiff alleged that Judge Coffee erred when he rejected plaintiff's proffered evidence relating to the undercharges. Plaintiff's motion was granted and this appeal followed.

[1]Plaintiff's complaint *inter alia* alleged that "within four years last past defendants, and each of them, became indebted to plaintiff on an open book account for trucking done for, and at the special instance and request of, defendants, and each of them, in the sum of $11,935.22."

■ Defendants correctly contend that plaintiff did not prove an account stated. There is absolutely no evidence that the parties ever struck a balance on the undercharges. On the contrary, it is clear from the evidence that defendants consistently denied liability for the undercharges and maintained that plaintiff's hauling services were performed under a contract of sale, not one of transportation. ■ It is elementary that an account stated is an express or implied agreement between a debtor and his creditor that a certain sum shall be paid and accepted in discharge of the debtor's obligation (1 Cal.Jur.2d, § 42, p. 366, 1952 ed.). ■ And an open book account is not transformed into an account stated by striking a balance unless both parties expressly or impliedly assent to its correctness, or unless the debtor expressly or impliedly acknowledges that he owes the amount struck (1 Cal.Jur.2d, § 50, p. 377, 1952 ed.).[2]

■ Defendants also correctly assert that plaintiff could not recover undercharges under the pleaded ''open book account.'' Plaintiff's president testified that defendants calculated the charges due each week and paid plaintiff on that basis. Thus, the open book account terminated with each weekly payment even though the balance struck may have rested on an illegal computation (*Groom* v. *Holm,* 176 Cal. App.2d 310 [1 Cal.Rptr. 410]). In fact, an open account between a shipper and a licensed radial highway common carrier cannot remain open for more than 15 days under the ''Collection of Charges Rule'' of the Public Utilities Commission.[3]

■ The plaintiff's right to recover undercharges in the instant case, if it exists at all, is based on defendants' legal obligation (a so-called ''implied promise'') to pay the minimum transportation rates fixed by the Public Utilities

---

[2]Plaintiff's counsel was under a misconception of the law when he asserted that his evidence proved an account stated. According to the record the following transpired:

''THE COURT: What is your proof, counsel, of an account stated?

''MR. GENDRON: The testimony of Mr. Norman Tharp that he made demand for $11,935.22 to Mr. Miller, for the amount stated in the Complaint; that this was done on two occasions, one on August 3, 1965, and the other one previous to that date, and that in doing so he mailed a copy of this material to Mr. Miller.

''MR. CAMPBELL: The testimony is the demand was refused, Your Honor.

''MR. GENDRON: That's right, but it doesn't change the character of the account.''

[3]Under subparagraph (b) of the ''Collection of Charges Rule'' a carrier may extend credit to the shipper up to but not exceeding 7 days,

Commission which became a part of the parties' original transportation agreement as a matter of law despite the parties' billing procedure (*Gardner* v. *Rich Mfg. Co.*, 68 Cal. App.2d 725 [158 P.2d 23]; *Pellandini* v. *Pacific Limestone Products, Inc.*, 245 Cal.App.2d 774 [54 Cal.Rptr. 290]). Thus, it is manifest that plaintiff's proffered evidence was at variance with the pleadings and that the trial court correctly sustained defendants' objections. It is settled that a plaintiff must recover, if at all, upon the cause of action alleged and not upon some other which may appear from the proofs (*Bailey* v. *Brown*, 4 Cal.App. 515 [88 P. 518]; *Lewis* v. *South San Francisco Yellow Cab Co.*, 93 Cal.App.2d 849 [210 P.2d 62]).

Thus, the crucial question is whether the trial judge should have ordered an appropriate amendment to plaintiff's pleadings even though the amendment would have required plaintiff to state an entirely different cause of action. If so, the court erred when it neglected to do so, and this error would support the order for a new trial. On the other hand, if the trial judge was not under a duty to order an amendment the subsequent order granting a new trial was in excess of the court's discretion. ▮ It is the rule that there is no legal ground for granting a new trial if it is granted for an error of law which did not occur (*Parker* v. *Womack*, 37 Cal.2d 116 [230 P.2d 823]).

It is absolutely clear from the record that defendants were not misled by the pleadings as to the true nature of plaintiff's action. Defendants requested and received a bill of particulars prior to trial in which the claimed undercharges were itemized in detail. Moreover, it is difficult to believe that defendants were unaware of the investigation of the Public Utilities Commission or that they did not know that the commission had directed the plaintiff to collect the undercharges in question. Thus, we may safely assume that defendants were prepared to meet the undercharges issue at the time of trial. ▮ Nevertheless, it has long been the decisional law of this state that a trial judge who correctly sustains an objection to proffered evidence because it is at variance with the pleadings is not

---

excluding Sundays and holidays, from the time the carrier presents his bill.
. Under subparagraph (d) the carrier must present his bill within 7 calendar days following delivery of the freight. Thus, the account cannot remain open for more than 15 days (*Groom* v. *Holm*, *supra*, 176 Cal. App.2d 310).

under a duty to order an appropriate amendment to enable the plaintiff to prove his case (*Davey* v. *Southern Pac. Co.*, 116 Cal. 325 [48 P. 117]). And ordinarily we would be reluctant to depart from this long established rule of pleading, particularly in a case where, as here, the plaintiff knew the exact reason for the court's ruling and yet failed to protect its interest by offering an appropriate amendment.[4]

We do not here deal with ordinary circumstances. On the contrary, the recovery of undercharges by a carrier through the judicial process is founded on salutary public policy and is not only a right but a duty. In fact, it has been repeatedly held that the recovery of undercharges is one of the most effective means of preserving the minimum rate structure and of eliminating collusion between carriers and shippers (*Hischemoeller* v. *National Ice etc. Storage Co.*, 46 Cal.2d 318 [294 P.2d 433]; *Gardner* v. *Basich Bros. Constr. Co.*, 44 Cal.2d 191 [281 P.2d 521]; *Gardner* v. *Rich Mfg. Co.*, 68 Cal.App.2d 725 [158 P.2d 23]; *People* ex rel. *Public Utilities Com.* v. *Ryerson*, 241 Cal.App.2d 115 [50 Cal.Rptr. 246]). As the court said in *Transmix Corp.* v. *Southern Pac. Co.*, 187 Cal.App.2d 257, 265 [9 Cal.Rptr. 714] : ''. . . The reason why there must be *inflexibility* in the enforcement of the published rate *against all and every suggestion for relaxation* rests upon the practical impossibility otherwise of maintaining equality between all shippers without preferential privileges of any sort. The rate when published becomes established by law. It can be varied only by law, and not by act of the parties.''

Moreover, it is common knowledge that carriers are *less than enthusiastic in their pursuit of litigation* to recover undercharges from their *customers*. Therefore, in the absence of careful judicial supervision, inept pleadings could be used as a clever device to thwart the orders of the Public Utilities Commission and to contravene the legislative scheme which is designed to protect the public interest in a vital quasi-public industry.

 We conclude that the public policy underlying the preservation of the minimum rate structure and the importance of maintaining integrity in the orders of the Public Utilities Commission overshadows the purpose for adhering to strict rules of pleading and imposed on the trial judge, in the

---

[4]In *Davey* v. *Southern Pac. Co., supra,* 116 Cal. 325, the defendant did not state that the evidence was at variance with the pleadings. Defendant objected on the ground that the evidence was incompetent, irrelevant and immaterial. Moreover, when the court sustained the objection it did not give its reasons.

instant case, the duty to order an appropriate amendment to plaintiff's pleadings after he sustained defendants' objections. Significantly, Code of Civil Procedure section 469 provides that: "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that a party has been so misled, the Court may order the pleading to be amended, upon such terms as may be just." And we are persuaded by Chief Justice Beatty's dissenting opinion in *Davey* v. *Southern Pac. Co.*, 116 Cal. 325, 333 [48 P. 117], that the instant case requires special treatment. This eminent jurist, with less compelling reasons, stated: "In this case, if this law (Code Civ.Proc. § 469) had been observed, the worst that could have happened to the plaintiff would have been a continuance at her cost. By disregarding it her action is defeated, regardless of its real merits. I do not think we are warranted in ignoring this provision of the statute in such a case."

In any event, we believe that the failure of the trial court to order an appropriate amendment in this case resulted in a judgment that was inconsistent with the prior decision of the Public Utilities Commission and was contrary to the principles articulated in *Pratt* v. *Coast Trucking, Inc.*, 228 Cal.App. 2d 139 [39 Cal.Rptr. 332], and *Pellandini* v. *Pacific Limestone Products, Inc., supra*, 245 Cal.App.2d 774. These cases hold that under our Constitution and laws the Public Utilities Commission has power to regulate transportation of intrastate shipments, and that its orders and decisions regarding thereto are binding and conclusive on all state courts with the exception of the Supreme Court. Significantly, in *Pratt* the court also held that state courts must take judicial notice of the commission's orders and decisions even though such orders and decisions are not called to the court's attention by the litigants.

For the foregoing reasons, we conclude that the court below properly granted plaintiff's motion for new trial. However, it must also allow plaintiff to amend its complaint to state a cause of action in accordance with the views expressed herein and the defendants to amend their answer to raise such defenses as they may deem appropriate under the circumstances.[5]

[5]For example, according to *Pellandini* v. *Pacific Limestone Products Inc., supra*, 245 Cal.App.2d at page 779, the application of the appro-

In view of the possibility of another trial, we deem it appropriate to comment on defendants' assertion that they are not bound by the order of the Public Utilities Commission since they were not parties to that proceeding. Arguments almost identical to those made by defendants on this point were rejected by the court in the *Pellandini* decision. The court stated: "We do not agree, however, with respondent's contention that effectuating of the decision of the commission by judgment against respondent for the undercharges would delay due process of law. . . . It would be difficult to believe, and respondent does not ask us to believe, that it did not have actual notice of the commission's order. But even if it had not known of the order before it was served with summons of the superior court, respondent then could have applied to the commission to rescind, alter or amend its order, under section 1708 of the Public Utilities Code, which provides for such process 'at any time.' The commission points out that in *Pacific Tel. & Tel. Co.* v. *Superior Court,* 60 Cal.2d 426, 430 [34 Cal.Rptr. 673, 386 P.2d 233], a party affected by an order of the commission had the right to seek retroactive rescission of a decision of the commission. This was done by the real party in interest in the *Pacific Telephone* case, even after time for petition for rehearing under section 1733 of the Public Utilities Code had expired. The Supreme Court decided that section 1733 is permissive rather than mandatory, and recognized the right of the party to petition for rescission of the order. (*Sokol* v. *Public Utilities Com.,* 65 Cal.2d 247, 251-252 [53 Cal.Rptr. 673, 418 P.2d 265].)

"Respondent, therefore, could have asked the trial court to postpone the case if that were necessary, in order to allow it to make its application to the commission. We cannot assume, nor was respondent entitled to surmise, that the commission would have acted unfavorably to it if respondent had been able to make a showing in its application that the commission's decision had been erroneous, or that new evidence would not bring about a different ruling. (See *Red River Broadcasting Co.* v. *Federal Communications Com.,* 98 F.2d 282, 288 [69 App.D.C. 1].) Respondent chose to put before the court the proposition that the contract which the commission had decided was in violation of the law actually was legal in all respects. If the judgment were allowed to stand, it would be antipodal to the decision and order of the commission." (245 Cal.App.2d at p. 778.)

---

priate statute of limitations depends upon the form and content of the original transportation agreement.

The order granting plaintiff a new trial is affirmed with directions to the trial court to allow the parties to first amend their pleadings within the times and under such terms as the court shall deem just and proper.

Conley, P. J., and Stone, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 5, 1968.